**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON**

Frank W. Volk, Chief Judge
United States Bankruptcy Court
Southern District of West Virginia

Dated: September 6th 2016

| | |
|---|---|
| IN RE: <br><br>JAMES LOUIS TILLETTE, II, and NANCY CAROL TILLETTE, <br><br><br>Debtors. | CASE NO. 2:14-bk-20541 <br><br> CHAPTER 7 <br><br><br><br><br>JUDGE FRANK W. VOLK |
| JAMES LOUIS TILLETTE, II and NANCY CAROL TILLETTE, <br><br>Plaintiffs, <br>v. <br><br>BENEFICIAL WEST VIRGINIA, INC., <br><br>Defendant. | ADVERSARY PROCEEDING NO. 2:15-ap-02007 |

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANT BENEFICIAL WEST VIRGINIA, INC'S
RENEWED MOTION FOR JUDGMENT ON THE PLEADINGS**

Pending is Defendant Beneficial West Virginia Inc.'s ("BWV") Renewed Motion for Judgment on the Pleadings (the "Motion") (docket no. 23), filed February 9, 2016. Plaintiffs James Louis Tillette II and Nancy Carol Tillette (collectively, the "Tillettes") responded on April 17, 2016. No reply has been received. The Motion is ready for adjudication.

This is a noncore proceeding related to a case under Title 11. The parties are deemed to have implicitly, if not explicitly, consented to entry of final judgment by the undersigned subject to review under 28 U.S.C. § 158 in accordance with 28 U.S.C. § 157(c)(2).

**I.**

The Tillettes reside in Fayette County, West Virginia. BWV makes consumer credit loans and insurance sales in Charleston, West Virginia. The Tillettes purchased their home, located in Lansing, West Virginia, in February 2005 for $50,000. Compl. ¶ 4. The loan was extended by First Community Bank, N.A. The home appraised at that time for $75,000. *Id.* In April 2006, the Tillettes secured an additional loan on their home through BWV in the amount of $28,065.64. Compl. ¶ 5. In March 2008, the Tillettes refinanced the loan obligations with BWV, which resulted in a single obligation in the amount of $88,907.05. The loan was secured by their home. The refinancing caused the Tillettes difficulty in meeting their monthly mortgage payments. They ultimately defaulted. Compl. ¶ 9.

The Tillettes characterize themselves as "unsophisticated consumers . . . ." (Compl. ¶ 13). They allege that the refinancing transaction was a "predatory loan transaction" accomplished "[t]hrough . . . sophisticated sales tactics" and that BWV "convinced" them that the transaction "was in their best interest." (Compl. ¶¶ 10, 6; *see also id.* ¶ 14 ("aggressively marketed its products to [them] . . . and unduly pressured them into believing its loans were in their best interest.").[1] The Tillettes further allege that BWV "failed to comply with appropriate and meaningful application, approval, underwriting and closing processes for the loan." (Compl. ¶ 8).

---

[1] The Tillettes also allege that, "The loan agreements . . . were induced by unconscionable conduct." (Compl. ¶ 15). This unadorned allegation is in the nature of a legal conclusion. It is of no consequence in testing the pleading's sufficiency under Rule 12(b). Of some moment in the analysis, however, is a different allegation in the complaint, which serves as a useful example of something that counts at the 12(b)(6) stage: "The loan agreements contained unfair terms, some of which constitute unfair surprise to the plaintiffs, including, but not limited to, a loan amount in excess of the fair market value of the property and the conversion of unsecured debt to secured debt." (Compl. ¶ 16). The Tillettes also profitably allege that BWV failed "to recommend a loan that was not secured by" the Tillettes' home, putting the family's residence at risk. (Compl. ¶ 22(c)).

On March 3, 2015, the Tillettes instituted this adversary proceeding. They allege claims for unconscionability (Count One), breach of fiduciary duty (Count Two), fraud and intentional misrepresentation (Count Three), negligent misrepresentation (Count Four), and illegal loan claims under *West Virginia Code* § 31-17-8(m)(8) (Count Five). Two damage counts make up the residue of the complaint.

The Tillettes filed their underlying Chapter 7 bankruptcy case on October 16, 2014. The Chapter 7 Trustee filed a Report of No Distribution in the case on January 29, 2015. The Tillettes were granted a discharge on February 12, 2015. The Tillettes then filed this adversary proceeding. BWV moved for judgment on the pleadings on June 30, 2015. The motion was denied on January 19, 2016, without prejudice with leave to refile based on the then-recent decision in *McFarland v. Wells Fargo Bank, N.A.*, 810 F.3d 273 (4th Cir. 2016). BWV then renewed its challenge to the complaint with the Motion.

## II.

### A.    Governing Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2); *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007). While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In order to state a claim for relief, a pleading must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleadings must at least set forth sufficient information for the court to determine whether some recognized legal theory exists on which relief could be accorded to the pleader. *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 563 (2007) (citing *Car Carriers v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Rule 12(c) is made applicable in adversary proceedings by Federal Rule of Bankruptcy Procedure 7012(b). Rule 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Rule 12(c) motions are subject to the same legal standards applied to motions made under Rule 12(b)(6). *Butler v. United States*, 702 F.3d 749, 751-52 (4th Cir. 2012); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Federal Rule of Civil Procedure 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6). The party moving for dismissal has the burden of showing that no claim for which relief can be granted has been stated. *Moore's Federal Practice* § 12.34.

In adjudicating a motion for judgment on the pleadings, a court evaluates whether the pleadings state "a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 547; *U.S. ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014). In doing so, a court must construe the "facts in the light most favorable to the [non-movant]" *Oberg*, 745 F.3d at 136 (quoting *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009)), and "draw all reasonable inferences in [the non-movant's] favor." *Id.* (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)). The court need not, however, "accept as true unwarranted inferences, unreasonable conclusions, or arguments," *Id.* (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)), nor "credit allegations that offer only 'naked assertions devoid of further factual enhancement . . . .'" *Id.*

(quoting *Iqbal*, 556 U.S. at 678 (internal quotation marks, alteration, and citation omitted)).

The decision in *Iqbal* provides some additional markers concerning the plausibility requirement:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief. . . .'"
>
> Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not "show[n]" -- "that the pleader is entitled to relief."
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 678-79 (internal citations omitted).

Akin to a Rule 12(b)(6) analysis, the Rule 12(c) calculus prescribes that "a court is not confined to the four corners of the complaint"; rather, a court "'may properly take judicial notice of matters of public record,' including statutes." *Oberg*, 745 F.3d at 136 (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see Papasan v. Allain*, 478 U.S. 265, 283 (1986). Further, although "'[c]ourts have not explicitly defined what constitutes a public record for 12(b)(6) purposes . . . some have determined . . . letter decisions of government agencies[] and published reports of administrative bodies' to be public records that properly can be considered on a motion to dismiss." *Guthrie v. McClaskey*, No. 1:11CV00061, 2012 WL

5494457, at *3 (W.D. Va. Nov. 13, 2012) (footnote omitted) (quoting P*ension Benefits Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993)).

**B.** **Analysis**

**1. Count One -- Unconscionability**

As recently reiterated by the Supreme Court of Appeals of West Virginia, "Under West Virginia law, we analyze unconscionability in terms of two component parts: procedural unconscionability and substantive unconscionability." *Nationstar Mortgage, LLC v. West*, 237 W. Va. 84, 88, 785 S.E.2d 634, 638 (2016) (internal quotation marks and cited authority omitted). In West Virginia, "[t]he doctrine of unconscionability means that, because of an overall and gross imbalance, one-sidedness or lop-sidedness in a contract, a court may be justified in refusing to enforce the contract as written." *Brown v. Genesis Healthcare Corp.*, 229 W.Va. 382, 391, 729 S.E.2d 217, 226 (2012). Under the West Virginia Consumer Credit and Protection Act, ("WVCCPA"), in order for this Court to find any term, portion, or an entire contract unconscionable, the contract must have been unconscionable at the time of contracting. W. Va. Code § 46A-2-121(1)(b). "[A] contract term is unenforceable if it is both procedurally and substantively unconscionable. However, both need not be present to the same degree. " *Genesis Healthcare Corp.*, 229 W.Va. at 392, 729 S.E.2d at 227. Courts instead "should apply a 'sliding scale' in making this determination." *Id.*

In *Nationstar*, Justice Loughry revisited the familiar concept of procedural unconscionability:

> Procedural unconscionability is concerned with inequities, improprieties, or unfairness in the bargaining process and formation of the contract. Procedural

> unconscionability involves a variety of inadequacies that results in the lack of a real and voluntary meeting of the minds of the parties, considering all the circumstances surrounding the transaction. These inadequacies, include, but are not limited to, the age, literacy, or lack of sophistication of a party; hidden or unduly complex contract terms; the adhesive nature of the contract; and the manner and setting in which the contract was formed, including whether each party had a reasonable opportunity to understand the terms of the contract.

*Nationstar*, 237 W. Va. at 88, 785 S.E.2d at 638 (internal quotation marks and cited authority omitted).  Substantive unconscionability, on the other hand, focuses "on the nature of the contractual provisions rather than on the circumstances surrounding the contract's formation . . . ." *Id.* at 92. 785 S.E.2d at 642.  The summary of substantive unconscionability was recited as follows:

> Substantive unconscionability involves unfairness in the contract itself and whether a contract term is one-sided and will have an overly harsh effect on the disadvantaged party. The factors to be weighed in assessing substantive unconscionability vary with the content of the agreement. Generally, courts should consider the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and public policy concerns.

*Id.* (internal quotation marks and cited authority omitted).

The Tillettes claim that the loan obtained through BWV was induced by unconscionable conduct. Compl. ¶ 15. They allege that the loan agreements contained unfair terms, including a loan amount in excess of the fair market value of the collateral upon which the loan was underwritten. Compl. ¶ 16. It is true that "the amount of a mortgage loan, by itself, cannot show substantive unconscionability under West Virginia law." *McFarland*, 810 F.3d at 276. Indeed, "receiving too much money from a bank is not what is generally meant by 'overly harsh treatment.'" *Id.* at 280.  But the decision in *McFarland* left open the possibility that the loan amount, combined with other circumstances, could give rise to a claim for unconscionable contract.

At bottom, the Tillettes must allege that the terms of the loan were "unconscionable at the time [the loan] was made *or* [that it was] induced by unconscionable conduct." *McFarland,* 810 F.3d at 284 (alteration in original) (quoting W.Va. Code § 46A-2-121(1)(a)). In making the determination, the Supreme Court of Appeals has noted that "[t]he concept of unconscionability must be applied in a flexible manner, taking into consideration all of the facts and circumstances of a particular case." *Genesis Healthcare Corp.*, 229 W.Va. at 391, 729 S.E.2d at 226.

While the circumstances here are exceptionally close to the Rule 12 line of demarcation, the allegations make the wicket. The Tillettes allege unfair terms and surprise, providing the non-exclusive averment that they are "unsophisticated consumers" who were preyed upon through "sophisticated sales tactics," "aggressive market[ing]," and "undu[e] pressure[]" and ultimately cajoled by BWV personnel to take a sizeable loan and put their home at risk, ultimately driving them to insolvency. The Tillettes further allege that BWV "failed to comply with appropriate and meaningful application, approval, underwriting and closing processes for the loan" and steered the Tillettes to convert "unsecured debt to secured debt." These allegations are minimally sufficient to warrant further inquiry through discovery.

It is, accordingly, **ORDERED** that BWV's Motion be, and hereby is, **DENIED** as to Count One.

### 2. Count Two -- Breach of Fiduciary Duty

Regardless of the label chosen, the Tillettes are attempting in Count Two to "maintain an action in tort for an alleged breach of contractual duty." *Lockhart v. Airco Heating & Cooling, Inc.*, 211 W. Va. 609, 614, 567 S.E.2d 619, 624 (2002). This they may not do. In West Virginia, a lender owes a legal duty to a borrower only if there exists between the two a

"special relationship." *See e.g. White v. AAMG Constr. Lending Ctr.,* 226 W. Va. 339, 346, 700 S.E.2d 791, 798 (2010); *Glascock v. City Nat'l Bank of West Virginia*, 213 W. Va. 61, 62, 576 S.E.2d 540, 541 (2002). In *Glascock,* the Supreme Court of Appeals found that a "special relationship" exists in situations such as where a lender so immerses itself in the borrower's business that a tort duty necessarily arose. *Glascock*, 213 W. Va. at 67, 576 S.E.2d at 546. Another instance where a special relationship arose was where a "lender maintain[ed] oversight of, or intervene[ed] in the quality of . . . [a] construction process." *White,* 226 W. Va. at 347, 700 S.E.2d at 799. Distilled to its essence, a special relationship may exist when a lender performs "services not normally provided by a lender to a borrower." *Tinsley v. OneWest Bank, FSB*, 4 F. Supp. 3d 805, 839 (S.D.W. Va. 2014).

Measured against this standard, the Tillettes' pleading is insufficient. The Tillettes' central allegation is as follows:

> [BWV offers] consumers the expertise of professional mortgage bankers, who dig deep into a borrower's financial background and analytically provide financial advice and purportedly recommend the best loan product for the consumers' circumstances . . . .

(Compl. ¶ 20). This is not, however, unlike what commercial lenders do each day. Borrowers fill out detailed loan applications with extensive financial information and lending institutions, quite permissibly, recommend options. This type of information disclosure and resultant financial advice is not unusual in any way. The Tillettes' allegations are thus insufficient to give rise to a special relationship.

It is, accordingly, **ORDERED** that BWV's Motion be, and hereby is, **GRANTED** as to Count Two**.**

### 3. Count Three -- Fraud/Intentional Misrepresentation

The Supreme Court of Appeals noted recently the well-established elements governing a fraud claim:

> "'The essential elements in an action for fraud are: "(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied on it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied on it."'

*Sneberger v. Morrison*, 235 W. Va. 654, 670, 776 S.E.2d 156, 172 (2015) (quoting *Horton v. Tyree*, 104 W.Va. 238, 242, 139 S.E. 737 (1927); Syl. Pt. 1, *Lengyel v. Lint*, 167 W.Va. 272, 280 S.E.2d 66 (1981)).

It is incumbent upon the Tillettes to plead fraud "with particularity [as to] the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). As noted by our court of appeals, "[t]hese circumstances are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir. 2015) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1297, at 590 (2d ed.1990)).

The Tillettes allegations are generalized. For example, they assert that BWV "by way of its acts, omissions and concealment, intentionally made representations to the plaintiffs that were false and/or made misrepresentations with a reckless disregard as to their veracity." (Compl. ¶ 26). They also contend that, "[a]s a direct and proximate result of the defendants' misrepresentations, as herein above alleged, the plaintiffs suffered the injuries, damages and losses set forth" in the Complaint. (Compl. ¶ 31). Their timing allegations are similarly imprecise. *(See* Compl. ¶¶ 5, 7).

These and similar, general allegations are insufficient to state a fraud "claim . . . that is plausible on its face." *Twombly*, 550 U.S. at 547.

It is, accordingly, **ORDERED** that BWV's Motion be, and hereby is, **GRANTED** as to Count Three.[2]

### III.

Based upon the foregoing discussion, it is **ORDERED** that the Motion be, and hereby is, **DENIED** as to Count One and **GRANTED** in all other respects, with leave to plead anew, on or before September 15, 2016, any claims dismissed due to infirm or missing allegations.

An updated scheduling order will be issued in due course but, if it is not, counsel shall notify the Bankruptcy Clerk of Court of the necessity of an updated scheduling order on or before September 16, 2016.

---

[2] The remaining counts are subject to summary disposition. Respecting Count Four, our court of appeals has noted in an unpublished disposition that, "[i]t is an open question in this Circuit whether a negligent misrepresentation claim must be pleaded with particularity." *Bartlett v. Frederick Cty., Maryland*, No. 06-1615. 2007 WL 2489707, at *7 (4th Cir. Aug. 21, 2007). In a recent published opinion, however, one of our district judges appears to have applied the heightened Rule 9(b) standard to a claim of negligent misrepresentation. *See Conley v. Ryan*, 92 F. Supp. 3d 502, 516 (S.D.W. Va. 2015) ("Because Conley has successfully pled a claim for fraud, he has also successfully set forth a claim for negligent misrepresentation."). The undersigned chooses a like course, requiring the dismissal without prejudice of Count Four. Respecting Count Five, the Court notes that the Tillettes have not responded to BWV's statute of limitations challenge. Deeming the argument unopposed, dismissal of Count Five is appropriate. Respecting Counts Six and Seven, neither "Damages" nor "Punitive Damages" are freestanding claims for relief. With the understanding that the Tillettes have successfully pled their entitlement to damages, it is understood that those damages are not claims.

It is, accordingly, **ORDERED** that BWV's Motion be, and hereby is, **GRANTED** as to Counts Four, Five, Six, and Seven.